## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **PATTY SUE HUFF,** | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **v.** | ) | |
| | ) | |
| **SOUTHWEST VIRGINIA** | ) | |
| **REGIONAL JAIL** | ) | Civil Action No. 1:08cv00041 |
| **AUTHORITY, et al.** | ) | |
| Defendants | ) | |
| | ) | |
| | ) | **BY: PAMELA MEADE SARGENT** |
| | ) | **UNITED STATES MAGISTRATE JUDGE** |

The plaintiff, Patty Sue Huff, brought this case against defendants Southwest Virginia Regional Jail Authority, ("SWVRJA"), and the individual defendants, individually and in their respective official capacities. Huff seeks recovery under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., for sex discrimination, the Age Discrimination in Employment Act of 1967, ("ADEA"), 29 U.S.C. §§ 621 *et seq*., for age discrimination, the Fourteenth Amendment for a violation of procedural due process, and wrongful discharge in violation of the Constitution of the Commonwealth of Virginia, Virginia state law and SWVRJA's own regulations and policies. Huff's claims stem from her employment as a charge nurse at SWVRJA, effective April 18, 2005, and her forced resignation therefrom on April 19, 2006.

This matter is currently before the court on the defendants' Motion to Dismiss the plaintiff's Complaint for failure to state a claim upon which relief may be granted

Case 1:08-cv-00041-GMW-PMS   Document 20   Filed 02/17/09   Page 1 of 23   Pageid#: 73

pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Item No. 5), ("Motion to Dismiss"). Specifically, the defendants request dismissal of the Complaint against the individual defendants on Counts I, II, III and IV and dismissal of the Complaint against SWVRJA on Counts III and IV. Huff has responded to the Motion to Dismiss. (Docket Item No. 13). This court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. The Motion to Dismiss is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

## I. Facts

Huff filed her Complaint with this court on September 26, 2008, asserting violations of Title VII of the Civil Rights Act of 1964, the ADEA, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 and the Constitution of the Commonwealth of Virginia, which allegedly occurred during her employment with SWVRJA and upon her forced resignation therefrom on April 19, 2006.

For the purpose of the court's consideration of the Motion to Dismiss, the facts, as alleged in the Complaint, will be accepted as true. Huff states in her Complaint that she was hired as a full-time charge nurse for the Abingdon Facility of SWVRJA, effective April 18, 2005, at which time she was older than 40 years of age. (Complaint at 6, 9.) She alleges that during the term of her employment with SWVRJA, she was subjected to intimidating, demeaning and harassing conduct by supervisory personnel of SWVRJA on the basis of her gender. (Complaint at 6.) Huff

-2-

alleges that, although she complained to superior officers regarding such conduct, no meaningful action was taken by SWVRJA or its employees. (Complaint at 7.) Huff contends that SWVRJA has made a pattern and practice of discriminating against females, in that female employees are singled out for intimidating, demeaning and harassing conduct and are treated differently than male employees in such matters as promotions, work assignments, work conditions, disciplinary actions and termination. (Complaint at 7.)

Huff specifically alleges that defendant Major Matt Pilkenton, an employee of SWVRJA who held a position of authority and supervision over other SWVRJA employees, had made statements prior to her termination that there were too many females within SWVRJA and that he intended to change that situation by getting rid of them and replacing them with males. (Complaint at 7.) She alleges that Dr. Kavah Ofagh, an employee of SWVRJA who held a position of authority and supervision over other SWVRJA employees, including Huff, made statements that women were intellectually inferior to men and that was why women were nurses and men were doctors, as well as other statements and conduct that were demeaning to women. (Complaint at 7.) Huff alleges that female employees were subjected to demeaning, derogatory and humiliating conduct and verbal abuse. (Complaint at 8.) She contends that the defendants created a work environment hostile to women, in which women were discriminated against in hiring, promotions, work assignments, work conditions, disciplinary and termination practices. (Complaint at 8.) Huff alleges that there was disparate treatment of females at SWVRJA in disciplinary matters, in that males were more likely to be transferred or demoted for conduct for which a female employee would be more harshly disciplined or fired. (Complaint at 8.) Huff alleges that she

-3-

was terminated without cause and was denied any meaningful process by which to contest her termination.  (Complaint at 7.)  She further alleges that, subsequent to her termination, she attempted to address her situation by communicating with individual members of the Governing Board of SWVRJA, including defendant Sheriff Steve Dye of Russell County, Virginia, Sheriff Fred P. Newman of Washington County, Virginia, Board Member D. Carter McGlothlin and others, but no corrective action was taken.  (Complaint at 7-8.)

Huff alleges that she was replaced by a male employee who was less than 40 years old and who was paid at a higher rate of compensation.  (Complaint at 8, 9.) Huff alleges that she was given no legitimate reason for her termination and was given no meaningful or legally sufficient opportunity to respond to or address any allegations that may have led to her termination.  (Complaint at 10.)  She alleges that she was terminated in order to punish her and to retaliate against her due to her gender and for her complaints of discriminatory treatment and/or for such other illegal or improper motives known only to the defendants.  (Complaint at 11.)

## II.  Analysis

### Motion to Dismiss

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  In considering such a motion, the court should accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff.  *See, e.g., De Sole v. United States*, 947 F.2d 1169, 1171 (4th

Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

For quite some time this court has cited *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), for the proposition that in order to grant a motion to dismiss, it must appear certain that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief. *See also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). However, the Supreme Court recently revisited the proper standard of review for a motion to dismiss and stated that the "no set of facts" language from *Conley* has "earned its retirement" and "is best forgotten" because it is an "incomplete, negative gloss on an accepted pleading standard." *Bell Atl. Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1969 (2007).

In *Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965 (citations omitted). Additionally, the Court established a "plausibility standard" in which the pleadings must allege enough to make it clear that relief is not merely conceivable but plausible. *See Twombly*, 127 S. Ct. at 1965-69.

-5-

*1. Sex Discrimination Claim*

When a 12(b)(6) motion deals with a civil rights complaint, the court should not dismiss the claim unless it appears certain that the plaintiff is not entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. *See Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (citations omitted). However, the court need not accept as true the legal conclusions set forth in a plaintiff's complaint. *See Edwards*, 178 F.3d at 244. Furthermore, mere legal conclusions couched as factual allegations need not be accepted as true. *See Assa'Ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D.Va. 1989) (citing *Papasan*, 478 U.S. at 286).

> According to 42 U.S.C. § 2000e-2(a)(1):
>
> It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. ...

42 U.S.C.A. § 2000e-2(a)(1) (West 2003). The term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C.A. § 2000e(b) (West 2003). The parties agree that the term "agent" is not defined. Huff argues that the individual defendants are liable under Title VII because they fall within the term "agent" as that term is contemplated by the statute. For the following reasons, this court disagrees.

-6-

As the defendants argue in their brief, the Fourth Circuit has unequivocally held that supervisors are not liable in their individual capacities for Title VII violations. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). In *Lissau*, the plaintiff brought a Title VII suit against her former supervisor, in his individual capacity, and her former employer, alleging that both were liable for a sexually hostile work environment created by her former supervisor. The plaintiff contended that the supervisor was an agent of the employer, thereby falling within the definition of an "employer." *See Lissau*, 159 F.3d at 180. Based upon an analysis of the language of Title VII and its remedial scheme, the Fourth Circuit found that supervisors are not liable in their individual capacities for Title VII violations. *See Lissau*, 159 F.3d at 180. Specifically, the court noted its then-recent interpretation of a similar statutory definition of the term "employer" in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994), an ADEA case. *See Lissau*, 159 F.3d at 180. The ADEA defines "employer" as including persons who employ 20 or more workers and "any agent of such a person." *See* 29 U.S.C.A. § 630(b) (West 2008). In *Birkbeck*, the Fourth Circuit held that the inclusion of the term "agent" did not signal a congressional desire to impose liability on individual supervisors. *See Lissau*, 159 F.3d at 180. Instead, the court held that it simply represented "an unremarkable expression of respondeat superior – that discriminatory personnel actions taken by an employer's agent may create liability for the employer." *Lissau*, 159 F.3d at 180 (quoting *Birkbeck*, 30 F.3d at 510). The court in *Birkbeck* also noted that it would make little sense to hold a single individual liable when Congress had expressly exempted all companies employing fewer than 20 persons from the statute. *See Lissau*, 159 F.3d at 180 (citing *Birkbeck*, 30 F.3d at 510).

-7-

The *Lissau* court reasoned that "[t]he Title VII definition of employer must be read in the same fashion as the ADEA definition of employer." 159 F.3d at 180. The Fourth Circuit noted that it already had observed that Title VII is the ADEA's "closest statutory kin." *Lissau*, 159 F.3d at 180 (quoting *Birkbeck*, 30 F.3d at 510). Specifically, the *Lissau* court reasoned that because Title VII, like the ADEA, exempts small employers, "it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company." 159 F.3d at 180 (citing *Birkbeck*, 30 F.3d at 510). That being the case, the *Lissau* court interpreted the inclusion of the term "agent" in Title VII's definition of employer simply to establish a limit on an employer's liability for its employees' actions. *See* 159 F.3d at 180 (citing *Birkbeck*, 30 F.3d at 510-11; *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)).

In addition to this analysis of the language of Title VII, the *Lissau* court found that the 1991 amendments to Title VII further bolstered its conclusion that individuals are not liable under the Act. Specifically, the court noted that, prior to 1991, remedies under Title VII were typically limited to back pay and equitable relief such as reinstatement that "typically are only obtainable from an employing entity, not from a mere individual." *Lissau*, 159 F.3d at 180-81 (quoting *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995)). However, in 1991 Congress added compensatory and punitive damages to the list of available remedies. *See* Civil Rights Act of 1991, § 102, Pub. L. No. 102-166, 105 Stat. 1071, 1072-73 (codified at 42 U.S.C. § 1981a), ("CRA"). In the CRA's findings, Congress noted that "additional remedies under Federal law are needed to deter unlawful harassment and intentional

-8-

discrimination in the workplace." CRA, § 2, Pub. L. No. 102-166, 105 Stat. at 1071. Congress tied the amount of available compensatory and punitive relief to the size of the employer. *See* CRA, § 102(b)(3), Pub. L. No. 102-166, 105 Stat. at 1073 (codified at 42 U.S.C. § 1981a(b)(3)). This "sliding scale of liability" does not stipulate an amount in cases where a plaintiff seeks to hold an individual supervisor liable. *See Lissau*, 159 F.3d at 181. The *Lissau* court observed that such amendments to the Act's remedial scheme suggested that Congress intended that only employers be liable for Title VII violations. *See* 159 F.3d at 181. Simply nowhere does the CRA mention individual liability as an available remedy. *See Lissau*, 159 F.3d at 181. The *Lissau* court held that to allow individual liability would improperly expand the remedial scheme crafted by Congress. *See* 159 F.3d at 181.

Lastly, the Fourth Circuit in *Lissau* noted that "every circuit that ha[d] confronted [the] issue [of whether individual supervisors are liable under Title VII] since the enactment of the CRA has rejected claims of individual liability" based on the same reasoning as it. 159 F.3d at 181. As the defendants note in their brief, the United States District Court for the Western District of Virginia has recently followed the *Lissau* holding in *Taylor v. County of Pulaski*, 2008 WL 4533977 (W.D. Va. Oct. 8, 2008).

In her response, Huff contends that the court should give the term "agent" its common law meaning, specifically, "one who is authorized to act for or in place of another." Huff proceeds to argue that the defendants who are members of the Governing Board of SWVRJA clearly fall within that definition of agent, thereby allowing for liability for violations of Title VII. This court disagrees. While it is

-9-

well-settled that undefined statutory terms should be given their "ordinary, contemporary, common meaning," such ordinary meaning is to be applied only in the absence of an indication that Congress intended it to bear some different import. *Teshome-Gebreegziabher v. Mukasey*, 528 F.3d 330, 332 (4th Cir. 2008); *DIRECTV, Inc. v. Nicholas*, 403 F.3d 223, 225 (4th Cir. 2005). Such is the case here. This court finds the reasoning of the *Lissau* court and other circuits, including the Second, Third, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh and D.C. Circuits, to be persuasive.[1] As discussed above, to give the term "agent" its ordinary and common meaning as advanced by Huff would result in the incongruous outcome emphasized by the Fourth Circuit in *Lissau*. Huff attempts to distinguish the *Lissau* case from the case at bar on the following grounds: (1) the SWVRJA is a "public politic created by statute"; (2) the individual defendants in the case at bar have been sued in both their individual and official capacities; and (3) she intends to show that SWVRJA's purpose and responsibilities and the power to act on its behalf granted to the individual defendants distinguish them from supervisors in the private sector.

The court first notes that Huff has offered no legal support for her argument that because SWVRJA is a "public politic created by statute," as opposed to a private sector entity, the individual defendants should be liable under Title VII. Moreover, the court notes that it can find no case law to support such a proposition. Next, the court finds that it is of no moment that 31 of the individual defendants are sued both

_____

[1]*See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2[d] Cir. 1995); *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3rd Cir. 1996); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997); *Williams v. Banning*, 72 F.3d 552, 554 (7th Cir. 1995); *Smith v. St. Bernards Reg. Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *Miller*, 991 F.2d at 588; *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995).

Case 1:08-cv-00041-GMW-PMS   Document 20   Filed 02/17/09   Page 10 of 23   Pageid#: 82

individually and as "Board Members." The court finds that the reasoning of the *Lissau* court, nonetheless, applies all the same. While the *Lissau* case dealt with supervisory liability, in the sense that the defendant was a former supervisor of the plaintiff, the reasoning applied by the Fourth Circuit would extend to such "Board Members." The *Lissau* court's reasoning, as explained above, was based on an analysis of the Act's language, as well as its remedial scheme, which, the court held, revealed that the term "agent" was used in the Act merely to denote the concept of respondeat superior. Thus, Huff's argument that the Board Members were "truly" agents makes no difference because even if they were deemed to be agents, the Fourth Circuit has clearly spoken on this issue, holding that it is only employers that can be held liable under Title VII. The same reasoning would apply to all of the remaining individual defendants, who were sued in any manner other than individually and in their respective roles as supervisory employees.[2]

The court also is not persuaded by Huff's argument that because these defendants were sued in *both* their individual *and* official capacities, her Title VII claim against them should not be dismissed. This is because the "official capacity" to which Huff refers is exactly the capacity that the *Lissau* court found insufficient to confer liability under Title VII.

For all of the reasons cited above, the undersigned finds that Huff is not entitled to relief under any legal theory which might plausibly be suggested by the facts alleged against any of the individual defendants. That being the case, the court finds

---

[2]These remaining defendants are H. Lee Noble, sued individually and as a Supervisory Employee and as Superintendent of SWVRJA; and Kavah Ofagh, sued individually and as a Supervisory Employee and Medical Director of SWVRJA.

-11-

that Count I of the Complaint should be dismissed against all of the individual defendants.

### 2. ADEA Claim

As with Title VII claims, the Fourth Circuit, in *Birkbeck*, 30 F.3d at 510-11, held that individuals are not subject to liability under the ADEA. According to 29 U.S.C. § 623:

> It shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. ...

29 U.S.C.A. § 623(a)(1) (West 2008). The ADEA defines the term "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. ... The term also means ... any agent of such a person. ..." 29 U.S.C.A. § 630(b) (West 2008). For the same reasoning as set forth above for the dismissal of the Title VII claim, Count I, against the individual defendants, this court finds that the ADEA claim, Count II, against the individual defendants also must be dismissed.

### 3. Procedural Due Process Violation

In Count III of the Complaint, Huff alleges that the defendants deprived her of a vested property right protected by the Fourteenth Amendment to the United States

Constitution, under 42 U.S.C. § 1983, pursuant to the Constitution of the Commonwealth of Virginia, and in violation of SWVRJA's own regulations and policies. Specifically, Huff alleges that she had a vested property right in her continued and uninterrupted employment at SWVRJA, absent any legal cause for her termination. She alleges that she was given no legitimate reason for her discharge, nor was she given any meaningful or legally sufficient opportunity to respond to, or to address, any allegations that might have led to her discharge.

The Supreme Court in *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77 (1972), held that a public employee is entitled to procedural due process protections from a governmental employer if the employee has a protected property interest. However, the Court further held that such property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. Here, Huff does not specify what regulations and policies of SWVRJA were allegedly violated by her termination. She contends only that she had "a salary, health insurance program, employer-paid retirement benefits through the Virginia Retirement System, and the full benefit package available to full time SWVRJA employees."

The defendants have presented, by way of defendant H. Lee Noble's affidavit, evidence that Huff received a copy of "The Employee Guide of the Southwest Virginia Regional Jail Authority" in effect at the time she left SWVRJA, and which stated as follows: "Consistent with the employment-at-will relationship, you or the Authority may terminate the employment relationship at any time with or without

-13-

cause." (Exhibit A to Docket Item No. 5, ("Noble Affidavit")). Because matters outside the pleadings have been submitted by the defendants and have been considered by the court, the 12(b)(6) motion to dismiss on the plaintiff's due process claim shall be treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). *See* FED. R. CIV. P. 12(d). The parties were notified of such and allowed to provide any affidavits or other evidence they wished the court to consider on the issue.

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Therefore, in reviewing the defendants' motion for summary judgment on this issue, the court must view the facts and inferences in the light most favorable to Huff. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's

-14-

case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). Moreover, Rule 56(c) requires a court to enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an essential element of that party's claim. *See Celotex*, 477 U.S. at 322.

Virginia courts have "strenuously adhered to the presumption of at-will employment." *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995). This means that "where an employment relationship or contract is for an indefinite term, either party may terminate that relationship for any reason upon reasonable notice." *Nguyen*, 44 F.3d at 237 (quoting *Graham v. Cent. Fidelity Bank*, 428 S.E.2d 916, 917 (Va. 1993)).

In the case of *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985), the Supreme Court of Virginia recognized for the first time a "narrow exception" to the at-will employment doctrine. This narrow exception allows at-will employees to state a claim for wrongful discharge if they can identify a public policy that was violated by the termination of their employment. *See Bowman*, 331 S.E.2d at 800. Huff relies on *Bowman* in arguing that she had a vested interest that her employment would not be terminated for an *unlawful* reason. However, *Bowman* relates to an employee's ability to sustain a wrongful discharge claim, not to whether an employee can establish a vested property interest in continued employment for purposes of demonstrating a violation of procedural due process. Huff has cited no case law that stands for such a proposition, and the court can find none. In fact, the Virginia Supreme Court has specifically held that a government employee who is an at-will

-15-

employee has no vested property interest in her continued employment which is protected by the federal constitution. *See County of Giles v. Wines*, 546 S.E.2d 721, 725 (Va. 2001). Huff has failed to offer any factual evidence to dispute the defendants' evidence that she was an at-will employee. Specifically, she has not offered any evidence showing that she entered into an employment contract with SWVRJA, nor has she offered any evidence of the existence of a grievance procedure in place at SWVRJA to which she was denied access. Put quite simply, there is no genuine issue as to whether Huff was an at-will employee at SWVRJA. That being the case, the undersigned recommends that the court grant summary judgment on this claim in favor of all of the defendants.

### 4. *Common Law Wrongful Discharge Claim*

In Count IV of her Complaint, Huff alleges that she was discharged as punishment and retaliation due to her gender and for her complaints of discriminatory treatment and/or other illegal or improper motives.[3] Huff further alleges that such actions by the defendants were tortious and in violation of the clear public policies of Virginia, including, but not limited to, policies embodied in Article I, § 12 of the Constitution of the Commonwealth of Virginia, the Code of Virginia and SWVRJA's own regulations and policies. The defendants argue that Huff cannot sustain a common law cause of action for wrongful discharge subsequent to the 1995 amendments to the Virginia Human Rights Act.

---

[3]The court notes that Huff previously states in her Complaint that she was forced to resign.

-16-

Because Huff previously stated in her Complaint that she was forced to resign, the court construes this claim as one for wrongful constructive discharge. In three recent companion cases from this district, Judge Williams concluded that the Virginia Supreme Court would recognize a constructive discharge cause of action. *See Johnson v. Paramont Mfg., LLC*, 2006 U.S. Dist. LEXIS 67735 (W.D. Va. Sept. 21, 2006); *Watson v. Paramont Mfg., LLC*, 2006 U.S. Dist. LEXIS 78100 (W.D. Va. Oct. 18, 2006); *Hill v. Paramont Mfg., LLC*, 2006 U.S. Dist. LEXIS 78488 (W.D. Va. Oct. 18, 2006). Even assuming that a common law claim for wrongful constructive discharge exists under the facts of this case, Huff still cannot state a claim upon which relief may be granted for the reasons discussed below.

The current version of the VHRA states, in relevant part, as follows:

> It is the policy of the Commonwealth to ... [s]afeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability ... in employment. ...

VA. CODE ANN. § 2.2-3900 (2008 Repl. Vol.). In 1995, the VHRA was amended to add, among other things, § 2.2-2639(D),[4] which states, in relevant part, as follows: "[c]auses of action based upon the public policies reflected in this article shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances. ..." VA. CODE ANN. § 2.2-2639(D) (2008 Repl. Vol.). The effect of this subsection was analyzed by the Virginia Supreme Court in *Doss v. Jamco, Inc.*, 492 S.E.2d 441 (Va. 1997), and

---

[4]At the time of the 1995 amendments, this section was codified at Virginia Code Annotated § 2.1-725(D).

*Conner v. Nat'l Pest Control Ass'n, Inc.*, 513 S.E.2d 398 (Va. 1999).

In *Doss*, the Virginia Supreme Court concluded that this subsection plainly manifested an intent by the Virginia General Assembly to alter the common law and to limit actions based on violations of the policies reflected in the VHRA to applicable statutory causes of actions and remedies. *See* 492 S.E.2d at 446. That being said, the court in *Doss* held that the plaintiff could not maintain her common law cause of action based on alleged violations of policy stated in the VHRA, because allowing her to do so would circumvent and render meaningless the mandate of subsection (D) that the action for violations of such policies be "exclusively limited" to statutory causes of action. *See* 492 S.E.2d at 446.

In *Conner*, the plaintiff alleged that her termination constituted discrimination based on her gender and that it violated the public policy against retaliation for complaints of discrimination in employment as articulated in the VHRA *and other provisions of Virginia and federal law*. *See* 513 S.E.2d at 399. The Virginia Supreme Court held in *Conner* that the VHRA made statutory causes of action the exclusive avenues for pursuing a remedy for an alleged violation of any public policy reflected in the VHRA. *See* 513 S.E.2d at 400. Thus, the *Conner* court concluded that the Virginia General Assembly, in enacting the 1995 amendments to the VHRA, eliminated a common law cause of action for wrongful termination based on any public policy which is reflected in the VHRA, *regardless of whether the policy is articulated elsewhere*. *See* 513 S.E.2d at 400.

The Virginia Supreme Court reiterated its position on the issue in 2000 in

-18-

*Mitchem v. Counts*, 523 S.E.2d 246 (Va. 2000). In *Mitchem*, the plaintiff contended, on appeal, that she was discharged from her employment because, among other things, she rejected her employer's demands that she perform sexual acts in violation of Virginia Code Annotated § 18.2-344, which prohibits fornication, and Virginia Code Annotated § 18.2-345, which prohibits lewd and lascivious cohabitation. *See* 523 S.E.2d at 249. The court distinguished *Mitchem* from *Doss* and *Conner*, in that *Mitchem* identified public policies *not* reflected in the VHRA as the basis for the plaintiff's common law claims, while, at the same time, the conduct alleged *also* violated a public policy reflected in the VHRA. *See Mitchem*, 523 S.E.2d at 250. In accordance with its earlier decisions in *Doss* and *Conner*, the Virginia Supreme Court in *Mitchem* held that § 2.2-2639(D) abrogated only common law causes of action for wrongful termination that are based on the public policies reflected in the VHRA. *See* 523 S.E.2d at 250. The court held, however, that § 2.2-2639(D) did not prohibit a common law cause of action for wrongful termination based on the public policies against fornication and lewd and lascivious behavior, because those policies are not reflected in the VHRA. *See Mitchem*, 523 S.E.2d at 250.

In her Complaint, Huff alleges that the defendants' actions offended the public policies contained in Article I, § 12 of the Constitution of the Commonwealth of Virginia, the Code of Virginia and SWVRJA's own regulations and policies. Article I, § 12 of the Constitution of the Commonwealth of Virginia relates to freedom of speech. While Huff may believe that her freedom of speech was abridged by not being allowed to contest her discharge/forced resignation, her wrongful constructive discharge claim is not, and cannot be, based upon that action. Clearly, any such opportunity to contest her discharge/forced resignation would have occurred *after*

-19-

such discharge/forced resignation. Thus, this court finds Huff's attempt to use the public policy stated in Article I, § 12 misplaced as it relates to her argument that she should be allowed to sustain a common law wrongful constructive discharge claim. Furthermore, although Huff also directs the court to the public policies contained in the Virginia Code and SWVRJA's own regulations and policies, she does not specify to what public policies she is referring. When deciding a motion to dismiss under Rule 12(b)(6), the court need not accept as true the legal conclusions set forth in a plaintiff's complaint. *See Edwards*, 178 F.3d at 244. Furthermore, mere legal conclusions couched as factual allegations need not be accepted as true. *See Assa'Ad-Faltas*, 738 F. Supp. at 985 (citing *Papasan,* 478 U.S. at 286). Huff alleges that she was constructively discharged to punish her and to retaliate against her due to her gender and/or age and her complaints of gender and/or age discrimination. The prevention of gender and age discrimination in employment is clearly within the public policies reflected in the VHRA. That being the case, Huff cannot maintain a separate common law cause of action for wrongful constructive discharge.

For all of the above-stated reasons, the undersigned finds that Huff has failed to state a claim for wrongful constructive discharge upon which relief may be granted pursuant to Rule 12(b)(6). That being the case, I recommend that the court grant the defendants' Motion to Dismiss with regard to Count IV of Huff's Complaint as to all of the defendants. The court notes that the statutory cause of action created by the VHRA is not available to Huff because it applies only to employers who employ six to 14 employees. *See* VA. CODE ANN. § 2.2-2639 (2008 Repl. Vol.). Huff has stated in her brief in opposition to the Motion to Dismiss that SWVRJA employs more than 15 employees.

-20-

## PROPOSED FINDINGS OF FACTS AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  The plaintiff was discharged/forced to resign from her position as a charge nurse at SWVRJA on April 19, 2006;

2.  Supervisory liability is not allowed under Title VII;

3.  Title VII sex discrimination claims may be brought against only an employer as that term is defined in the Act;

4.  The phrase "and any agent of such person" as used in Title VII and in the ADEA are nothing more than recitations of the doctrine of respondeat superior;

5.  Thus, no agent of an employer may be held liable under Title VII or the ADEA;

6.  The plaintiff's Complaint fails to state a Title VII or an ADEA claim against the individual defendants because they are all either supervisors and/or agents of the employer;

7.  In order to sustain a claim for a violation of procedural due process, a plaintiff must show a vested property interest;

8.  Plaintiff was an at-will employee;

9.  At-will employees have no expectation in continued employment;

10. The plaintiff cannot establish a vested property interest in her continued employment;

11. Thus, summary judgment must be granted in favor of the defendants on the plaintiff's procedural due process claim;

12. The 1995 amendments to the VHRA altered the common law and limited actions based on violations of the policies reflected in the VHRA to applicable

-21-

statutory causes of actions and remedies;

13. The plaintiff alleges violations of the policies set forth in Article I, § 12 of the Virginia Constitution, the Code of Virginia and SWVRJA's own regulations and policies;

14. Plaintiff's reliance of Article I, § 12 of the Constitution of the Commonwealth of Virginia is misplaced;

15. The court cannot discern to which public policies the plaintiff is referring by referencing the Code of Virginia and SWVRJA's own regulations and policies;

16. Plaintiff's wrongful constructive discharge claim is based on unlawful gender and/or age discrimination, which is within the public policies reflected in the VHRA;

17. Pursuant to Virginia Code Annotated § 2.2-2639(D), plaintiff cannot maintain a separate common law claim for wrongful constructive discharge based on violation of public policies reflected within the VHRA;

18. Thus, the plaintiff's Complaint fails to state a common law wrongful constructive discharge claim upon which relief may be granted; and

19. Therefore, the court should dismiss Count IV of the Complaint for failure to state a claim under Rule 12(b)(6) as to all of the defendants.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motion to Dismiss, (Docket Item No. 5). In particular, I recommend that the court dismiss Counts I and II of the plaintiff's Complaint against the individual defendants pursuant to Rule 12(b)(6). I recommend that the court grant summary judgment in favor of all

the defendants on Count III, and I recommend that the court grant the Motion to Dismiss Count IV as to all of the defendants pursuant to Rule 12(b)(6).

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: This 17th day of February 2009.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE